United States District Court
District of Connecticut
FILED AT NEW HAVEN
11/21, 20 25
By N. Langello
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN RE: SEIZURE WARRANT         No. 3:25-mc-___110___ (RMS)

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT**

I, Geoffrey Goodwin, being duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I am a Special Agent with Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I have been a Special Agent with HSI since February 2006 and am currently assigned to the Hartford, CT Office of Investigations. As a Special Agent with HSI, I have conducted and participated in investigations involving identity theft, access device fraud, wire fraud, mail fraud, bank fraud and other financial crimes. I have further obtained and executed both search and arrest warrants. As an HSI Special Agent, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code. That is, I am an officer of the United States, who is empowered by law to conduct investigations of and make arrests for offenses enumerated in Title 18 of the United States Code.

2. I make this affidavit pursuant to 18 U.S.C. § 1343, Wire Fraud, in support of an application for a seizure warrant for the funds contained within Wells Fargo account ending 0522, held in the name of OneTime88 LLC, up to $90,000.00, hereafter referred to as the TARGET ACCOUNT.

3. I believe that probable cause exists to show that the funds contained within the TARGET ACCOUNT were obtained knowingly by a scheme or artifice to defraud, or for

obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice in violation of 18 U.S.C. § 1343, and that these funds are subject to forfeiture pursuant to civil forfeiture under 18 U.S.C. § 981(a)(1)(C) for the forfeiture of property which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1)), namely wire fraud in violation of 18 U.S.C. § 1343, or conspiracy to commit such offense, and criminal forfeiture under 18 U.S.C. § 981(a)(1)(A) via 18 U.S.C. § 1956(c)(7)(A) (defining specified unlawful activities to include offenses listed in 18 U.S.C. § 1961(1)), 18 U.S.C. § 1961(1) (covering 18 U.S.C. § 1343), and 28 U.S.C. § 2461 (permitting criminal forfeiture if civil forfeiture is permitted) for violations of 18 U.S.C. § 1343.

4. I request that the Court issue a seizure warrant for the TARGET ACCOUNT and the contents therein.

5. The facts in this Affidavit come from my personal observations, my training and experience, witness information, and information obtained from other law enforcement officers. This Affidavit is intended to show merely that there is sufficient probable cause for the issuance of the requested seizure warrants and does not set forth all of the information law enforcement officers have learned in this investigation.

## BACKGROUND OF INVESTIGATION

7. I am currently investigating a fraud scheme in which at least one individual, unidentified by Law Enforcement at this time, took various steps to defraud at least one known victim in this case as part of a "Phantom Hacker" scheme.

8.     A "Phantom Hacker" scheme is a scheme that typically occurs in 3 stages. The first stage, the "Compromise" stage, occurs when a victim receives an unsolicited pop-up window, email, or text claiming their computer is infected or compromised. After this window appears, the victim often is instructed to call a provided phone number for "assistance."

9.     The next stage, the "Technical Imposter" stage, occurs when the victim places that phone call to the provided number and the fraudster answers while posing as a technical support person. The fraudster then convinces the victim that there is a technical issue with their bank account and that the account is compromised, often claiming that the account is hacked or that employees at the bank are conspiring to compromise the victim's account.

10.    The third and final stage, the "Financial Institution Imposter" stage occurs when an additional co-conspirator fraudster, posing as a Bank or Government official, converses with the victim and tells the victim they must move their money out of their current account and place all funds into a "safe" account, typically controlled by the fraudster, to protect those funds. The victim then goes through with this activity, often transferring funds via wire, check, or physical withdrawal of funds accompanied by a physical handoff of those same funds to an additional co-conspirator.

11.    This fraud scheme, like many others, has common tenets including technological deception, instilling a sense of urgency within the victim, invoking fear within the victim, and isolating the victim.

12.    A "money mule" is someone who receives and moves money that came from victims of fraud. Often fraud victims are converted into "money mules" because of the directions and deception of the fraudster. Frequently, fraud victims do not realize they are engaged in unlawful activity due to their perceived relationship with the fraudster.

13.     A "funnel account" is a bank account utilized to launder money.  This is typically done by transferring unlawful money into the account, and then rapidly withdrawing the funds, or transferring the funds to additional accounts, all to disguise the nexus of the deposited funds, maintain control of the funds, and avoid law enforcement detection.  Common characteristics of "funnel accounts" including accounts with multiple deposits which are shortly transferred to other accounts; accounts with high dollar deposit activity, but low account balances; and accounts with deposits from multiple different individuals or companies.  Additionally, "funnel accounts" often receive multiple incoming wire transfers and send multiple outgoing wire transfers in short periods of time.

## FACTS IN SUPPORT OF PROBABLE CAUSE

14.     On September 28, 2025, as well as on October 8, 2025, the Guilford Police Department (GPD) interviewed a fraud victim, identified here as "RR", regarding a financial fraud where she was victimized.  During these two interviews, RR revealed that RR had lost approximately $240,000.00 United States Dollars (USD) in the commission of this fraud.

15.     Specifically, RR stated that on September 19, 2025, RR had received an email to her legitimate email inbox, and RR clicked the email believing that it was from a known sender.  Upon clicking the email, RR stated that RR's computer screen went black and a loud continuous alarm began to sound.  RR stated that RR then observed a pop-up message appear on the screen of the computer, displaying a phone number to call for Microsoft and instructing RR to call that number immediately.

16.     RR stated that upon calling the displayed telephone number via RR's cellular phone, RR spoke with a male whom identified himself as "Alex Finch," and claimed to be an employee of Microsoft, but who your Affiant believes to be a fraudster.  RR stated that Alex

informed her that an unknown individual was attempting to withdrawal funds from her Bank of America (BOA) bank account, and Alex then transferred the call to a "Supervisor" with BOA who identified herself as Janet Brown, another individual your Affiant believes to be a fraudster. RR stated that Janet told RR that, in order to prevent anyone from withdrawing funds from RR's BOA account, RR would have to withdrawal $90,000.00 United States Dollars (USD) out of RR's account.

17. On that same date RR was instructed by Janet to travel to the BOA branch in Guilford, CT. RR was directed to remain on the telephone with Janet while RR went inside and conducted the transaction. RR was further directed to not place the call on speaker or tell anyone at the bank because Janet believed that an employee of the branch was involved and had given out RR's personal information including RR's social security number. RR stated that she was told to obtain a BOA cashier's check from RR's account number ending in 6051 for $90,000.00 USD. RR was told that if any bank teller questions her, RR should respond by saying that the money was going to one of RR's sons for trading and buying auto body parts.

18. RR followed these instructions, and then RR provided the BOA customer copy of cashier's check #6311202907 that listed the remitter as RR with the $90,000.00 USD cashier's check payable to the order of OneTime88 Limited Liability Company. Additionally, RR provided her BOA account number statement showing the aforementioned withdrawal.

19. RR stated that, once acquiring the cashier's check, RR was directed to travel to Wells Fargo (WF) Bank branch in Madison, CT to deposit the $90,000.00 USD cashier's check. Janet provided RR with WF account number ending 0522 (the TARGET ACCOUNT) and company information of OneTime88 Limited Liability Company (LLC), 4701 Sangamore Road, Suite 100 N., Bethesda, MD, 20816. However, RR stated that, upon attempting this, the WF

employee RR was working with declined to conduct the transaction because OneTime88 LLC has only been in business for 1 year, and the employee was hesitant about depositing the check into an account that was not in RR's name.

20. RR stated that RR told Janet that the deposit was unsuccessful, and Janet subsequently directed RR to mail the check to OneTime88 LLC, 1228 Avenue U, Brooklyn, NY 11229. RR stated that she then went to The UPS Store located in Guilford and mailed the check as directed. Furthermore, GPD swore to a State of CT Search Warrant and obtained information about the TARGET ACCOUNT showing a check deposit of $90,000.00 USD into the TARGET ACCOUNT on or around September 23, 2025.

21. RR stated that Janet advised RR that the Federal Bureau of Investigation (FBI) was now involved and that the suspects were using RR's money for online gambling and child pornography. RR was also told that the FDIC was involved, and RR would be insured up to $500,000.00 USD. RR stated that Janet provided RR with a case number and then transferred RR to a male, whom Janet named as Social Security Administrator representative Benjamin Stone, to take over RR's case. Your Affiant again believes that Benjamin Stone is an additional fraudster.

22. RR stated that Benjamin directed RR to go to a BOA branch that would be able to conduct a wire transfer for $150,000.00 USD. RR stated that the next day, September 20, 2025, RR traveled to the BOA branch in East Haven, CT and completed the aforementioned wire transfer for $150,000.00 USD. RR was directed to wire the money Mycelium Aarize, PTE. LTD, account number ending in 6974, and company address of 200 Jalan Sultan #03-45 (Textile Centre), Singapore 199018. The associated bank was provided as CIMB Singapore, 30 Raffles Pl, #04-01, Singapore, 048622, and swift code as CIBBSGSG. RR stated that RR was instructed

to tell the bank teller that RR knew the recipient company and the reason for the wire transfer was for RR's other son for software development.

23. A search of this swift code by GPD was confirmed to be CIMB bank with the matching bank address.

24. RR stated that during one of her conversations with Benjamin, Benjamin asked RR if RR had any other bank accounts, to which RR responded that she had another personal account with Ascend Bank in Guilford, CT. RR stated that on September 26, 2025, RR was instructed by Benjamin to go to Ascend bank in Guilford and withdraw $60,000.00 USD. RR stated that RR was instructed to tell the bank employees the reason for the large withdrawal was for construction on RR's bathroom. RR stated that the teller appeared to be skeptical and ultimately told RR that the bank does not maintain that amount of cash on hand, but the teller could have the money ready by Monday or Tuesday. RR stated that the teller gave RR $7,000.00 USD cash and RR informed Benjamin of what occurred. RR stated that Ascend Bank contacted RR's son, hereafter referred to as "DR", since DR is also listed on the account. During that time Ascend Bank advised DR of the withdrawal request, and DR immediately contacted RR and ceased any further transactions from occurring.

25. The fraudsters that spoke with RR (*e.g.*, Alex, Janet, and Benjamin) lied to RR to defraud her of her money. These conversations took place over the telephone and RR was in the District of Connecticut at the time of the calls. Moreover, the original email that started the fraud scheme was sent via the internet and was accessed by a computer located in the District of Connecticut.

26.     Below is a visual depiction of the above-mentioned activities in connection with this investigation, all of which is believed to have occurred between the dates of September 19, 2025, and September 26, 2025:



27.     As of November 7, 2025, your Affiant had provided WF with a "Freeze Request" for the TARGET ACCOUNT.  Furthermore, your Affiant had received documentation indicating that funds from the TARGET ACCOUNT are currently held in indemnification, and that the approximately value of those funds is believed to be around $90,000.00 USD.

**Intentionally Left Blank**

**CONCLUSION**

28. Based on the foregoing information set forth above, I submit that probable cause exists to believe that the contents of the TARGET ACCOUNT was obtained from wire fraud in violation of 18 U.S.C. § 1343 and I request that the Court issue a seizure warrant pursuant to pursuant to 18 U.S.C. § 981(b), 18 U.S.C. § 982(b)(1), and 21 U.S.C. § 853(f).

GEOFFREY M GOODWIN
Digitally signed by GEOFFREY M GOODWIN
Date: 2025.11.21 07:25:32 -05'00'

GEOFFREY GOODWIN
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

The truth of the foregoing affidavit has been attested to me by Special Agent Geoffrey Goodwin via Teams on this 21st day of November, 2025, at New Ha.

Robert M Spector
Digitally signed by Robert M Spector
Date: 2025.11.21 09:37:56 -05'00'

HONORABLE ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE